IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION



03 JUL 31 PM 2:59

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| GERALD L. MUNDY, | }<br>} |
| APPELLANT, | }<br>} |
| v. | } CIVIL ACTION NO.<br>} 03-AR-1272-E |
| GENERAL MOTORS ACCEPTANCE CORPORATION, | }<br>} APPEAL FROM BANKRUPTCY COURT<br>} CASE NO. 02-43090-JSS-13 |
| APPELLEE. | }<br>} |



## MEMORANDUM OPINION

This case is before this court on an appeal by debtor, Gerald L. Mundy ("Mundy"), from a decision by the United States Bankruptcy Court for the Northern District of Alabama, Eastern Division, Case No. 02-43090-JSS-13. On April 4, 2003, the bankruptcy court entered an order sustaining the objection of creditor, General Motors Acceptance Corporation (GMAC), to Mundy's Chapter 13 bankruptcy plan and denying confirmation of the plan. On April 7, 2003, the bankruptcy court granted GMAC's motion to dismiss the bankruptcy petition pursuant to 11 U.S.C. § 1307(c)(5), and Mundy timely appealed that decision pursuant to 28 U.S.C. § 158(a).

### Factual and Procedural Background

On March 11, 2002, Mundy purchased a new 2002 Cadillac Seville for the purchase price of $55,011.29. After applying a trade-in difference of $1,749.74 and a cash down payment of

$3,000, Mundy financed the balance, $51,261.55, through GMAC. Under the Retail Installment Sales Contract, Mundy agreed to pay $887.73 per month for 72 months beginning April 26, 2002. GMAC perfected its lien on the vehicle by obtaining a certificate of title, securing the loan.

According to Mundy's testimony, shortly after he purchased the Cadillac he realized that he was in financial trouble because he could not afford to pay his monthly expenses as a result of his obligation on the Cadillac. He is retired and lives on a fixed income of 3,450.00 per month. On May 16, 2002, just two months after the purchase of the Cadillac and less than thirty days after the first payment came due, Mundy filed for a petition for relief under Chapter 7 of the Bankruptcy Code. On August 26, 2002, Mundy received a discharge of his unsecured debt as a result of his Chapter 7 case. On September 3, 2002, just eight days later, Mundy filed his petition for reorganization under Chapter 13 of the Bankruptcy Code. Mundy made three payments to GMAC on the Cadillac between the time when he reaffirmed his obligation to GMAC on June 27, 2002, and the filing of his Chapter 13 proceeding. According to "Schedule D," filed with the original petition on September 20, 2002, Mundy had two automobiles at the time that he filed his Chapter 13 petition, the 2002 Cadillac financed with GMAC, valued at $47,000, and a 1990 Dodge Intrepid financed by Fort McClellan Credit Union,

valued at $12,700. Mundy filed a motion for valuation seeking to "cramdown" the market value of the Cadillac to $30,000. If this had been allowed GMAC's claim would have been bifurcated into a secured claim of $30,000 and an unsecured claim of $17,000. GMAC objected to the valuation and the confirmation of the plan, and the court sustained its objection. Mundy's original Chapter 13 plan proposed the retention of both vehicles paying out a zero distribution to unsecured creditors, including the unsecured portion of GMAC's claim on the Cadillac.[1] On February 21, 2003, Mundy filed a motion to amend his Chapter 13 plan and proposed an amended valuation of the Cadillac. Without explanation, the Dodge Intrepid was no longer listed among Mundy's secured debts or personal property from this point onward. On February 25, 2003, the bankruptcy court confirmed Mundy's proposed valuation of the Cadillac setting the market value at $37,000. The trustee, joined by GMAC, objected to confirmation of the plan predicated on disposable income. The court agreed, stating during the confirmation hearing on February 25, 2003:

> The objection raised by the trustee and GMAC is that the plan does not provide for all of the debtor's disposable income to be applied to the plan as the debtor is retaining a luxury item of a new, 2002 Cadillac Seville purchased in March of '02 prior to

---

[1]According to Schedule D unsecured claims totaling 15,300.00 were filed by other creditors, including an unsecured claim of $1,300 for a big screen television, and $14,000.00 on the unsecured portion of a home mortgage.

3

> this plan being filed in September of '02, which
> followed a Chapter 7 petition and discharge.
>
> The court finds that the objections are sustained. The
> debtor is not providing his disposable income under the
> facts of this case and, by the timing of the case and
> the lack of payments on the Cadillac, the plan was
> filed in **bad faith** and confirmation is denied.

(emphasis supplied)

On March 3, 2003, GMAC filed a motion to dismiss the petition. That same day Mundy proposed a new plan for confirmation increasing the offer to the trustee from $1,313.00 per month to $1,335.00 per month for 60 months. During the confirmation hearing on April 1, 2003, Mundy orally amended his plan proposing to pay his unsecured creditors 33% of their claims instead of zero. Mundy's amendment would have resulted in an unsecured claim of $11,860.04 for the Cadillac[2]. The trustee withdrew her objection to the plan's confirmation. GMAC maintained its objection, stating:

> Your Honor, we continue our objection from last time
> based on this court's ruling that the purchase of this
> car at a time when the debtor, as he testified, really
> couldn't afford it and immediately prior to the filing
> of this case, or very soon prior to the filing , was
> not able to pay it, you denied confirmation on a lack
> of good faith. The amendments don't change those
> facts.

---

[2]The full contract claim for the Cadillac at the time of Mundy's last amended plan was $48,860.04, $37,000 to be paid through the trustee over five years and 33% of the unsecured claim of $11,860.04.

4

> If you can recall that testimony, it was the debtor's income was the same now as when he bought it; his debts were less, if not the same. He couldn't afford the car now and he certainly couldn't afford it when he bought it if his debts were more and the court found on that the timing of the purchase of this car to be in **bad faith** and we don't think there is any change to that.

The bankruptcy court agreed with GMAC and denied confirmation stating:

> T]he court will not confirm this plan. The debtor is seeking to pay for a luxury item and not pay his unsecured claims. A fifty-five thousand dollar car is not necessary for the reorganization of the debtor.
>
> Confirmation is denied.

GMAC then moved for a dismissal of the petition pursuant to 11 U.S.C. § 1307(c)(5) based on the ground that Mundy had twice failed to gain confirmation of his plan. The court agreed, finding as follows:

> The court finds that when the debtor fails to pay his unsecured claims and drives a luxury automobile and seeks to finance a luxury automobile during the plan, and a fifty-five thousand dollar Cadillac qualifies, in the court's opinion, as a luxury automobile which is very different than finding that an automobile is a luxury item, the motion to dismiss is granted.

## Analysis

### Standard of Review

This court sits as an appellate court on appeal of a bankruptcy court's decision to deny confirmation and dismiss a debtor's Chapter 13 petition. *In re Hatem*, 273 B.R. 900,903 (S.D. Ala. 2001) citing *In re Williamson*, 15 F.3d 1037,1038(11th

5

Cir. 1994). The findings of fact by the bankruptcy Judge are accepted by this court unless they are "clearly erroneous" while conclusions of law are reviewed de novo. *Shelton v. Steering Fed. Credit Union*, 191 B.R. 893 (N.D. Ala. 1995); *In re Paschen*, 269 F.3d 1203, 1205 (11th Cir. 2002).

### Confirmation of the Proposed Plan

In a Chapter 13 proceeding the debtor bears the burden of proving that the requirements for confirmation have been met. *In re Jones*, 119 B.R. 996, 998 (N.D. Ind. 1990). Courts have looked to two provisions under the Bankruptcy Code, the "good faith" requirement of 11 U.S.C. § 1325(a)(3) and the "disposable income" requirement of 11 U.S.C. § 1325(b)(1)(B), for grounds to refuse confirmation when a debtor seeks to retain an expensive luxury asset with a sizable outstanding debt that is not necessary to the debtor's fresh start. The requirements for confirmation are set out in 11 U.S.C. § 1325:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>   (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title:
>   (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
>   (3) **the plan has been proposed in good faith and not by any means forbidden by law;**
>   (4) the value, as of the effective date of the plan, of property to distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the

>              debtor were liquidated under chapter 7 of this
>              title on such date;
>         (5) with respect to each allowed secured claim
>              provided for by the plan-
>              (A) the holder of such claim has accepted the
>                   plan;
>              (B)(i) the plan provides that the holder of
>                        such claim retain the lien securing
>                        such claim; and
>                    (ii) the value, as of the effective date
>                        of the plan, of property to be
>                        distributed under the plan on account
>                        of such claim is not less than the
>                        allowed amount of such claim; or
>              (C) the debtor surrenders the property
>                   securing such claim to such holder; and
>         (6) the debtor will be able to make all payments
>              under the plan and to comply with the plan.
>    (b)   (1) If the trustee or the holder of an allowed
>              unsecured claim objects to the confirmation of
>              the plan, then the court **may not approve the
>              plan unless,** as of the effective date of the
>              plan-
>              (A) the value of the property to be
>                   distributed under the plan on account of
>                   such claim is not less than the amount of
>                   such claim; or
>              (B) **the plan provides that all of debtor's
>                   projected disposable income to be
>                   received in the three-year period
>                   beginning on the date that the first
>                   payment is due under the plan will be
>                   applied to make payments under the plan.**
>         (2) For purposes of this subsection, "disposable
>              income" means income which is received by the
>              debtor and which is not reasonably necessary
>              to be expended-
>              (A) for the maintenance or support of the
>                   debtor or a dependent of the debtor,
>                   including charitable contributions (that
>                   meet the definition of "charitable
>                   contribution" under . . .

(emphasis supplied)

In *In re Rogers,* the bankruptcy court refused to confirm a debtor's plan that called for the retention of an expensive sport's car over a more moderately priced vehicle. *In re Rogers*, 65 B.R. 1018,1020 (Bankr. E.D. Mich. 1986). The court explained that it was not the description or even the worth of the asset, but rather the size of the debt that mattered. The court found that when the debtor's plan called for the budgeting of over $17,000 dollars in four years for basic transportation, the debtor had failed to meet the "disposable income" requirement of § 1325(b). The court acknowledged that an automobile was a necessary item, but reasoned that the budgeting of large payments for the retention of an expensive sport's car under a debtor's plan in lieu of payments to the creditors was not "reasonably necessary to be expended for the maintenance or support of the debtor." Additionally, the court found support in its denial of confirmation based on the "good faith" requirement of § 1325(a)(3), explaining that the ability-to-pay test clarifies the "good faith" standard. *Id.* at 1020.

In *In re Cordes*, 147 B.R. 498 (Bankr. D. Minn. 1992), the bankruptcy court disagreed with the "disposable income" rationale for denying confirmation, reasoning instead that the proper analysis is whether or not the plan is proposed in "good faith" when the debtor seeks to retain an expensive and heavily encumbered asset at the expense of his creditors. *In re Cordes*,

8

147 B.R. 498, 505 (Bankr. D. Minn. 1992). The bankruptcy court denied confirmation finding that where the debtor sought to retain a heavily encumbered recreational boat, 90 horse power motor, and trailer at the expense of his creditors, the plan was not proposed in "good faith." *Id*. According to the court, the legal issue is whether "a Chapter 13 plan violate[s] the 'good faith' requirement of 11 U.S.C. § 1325(a)(3), or the 'best efforts' requirement of 11 U.S.C. § 1325(b)(1), when it proposes a highest-priority treatment for a claim secured by non-essential but valuable recreational equipment, and deferred and reduced payment to unsecured creditors?" *Id*. at 501-502. The *Cordes* court noted that many courts have addressed similar questions dealing with non-essential items under a variety of approaches under §§ 1325(a)(3) and 1325(b)(1), and ultimately reached the same conclusion, namely, that debtors were not properly invoking Chapter 13 remedies when they proposed to subordinate unsecured creditors' rights to their time-purchase of specific assets which were not essential to a "fresh start." *In re Cordes*, 147 B.R. at 501 citing *In re Hedges*, 68 B.R. 18 (Bankr. E.D. Va. 1986)(involving recreational boat); *In re Moore*, 24 B.R. 857 (Bankr. N.D. Ill. 1982)(involving Kawasaki motorcycle); *In re Jenkins*, 20 B.R. 642 (E.D. Ark. 1982)(involving Ford pickup truck purchased less than one year before filing); *In re Jernigan*, 130 B.R. 879 (Bankr. N.D. Okla. 1991)(involving Ford automobile

termed "expensive and valuable" by court); *In re Jones*, 119 B.R. 996 (Bankr. N.D. Ind. 1990)(involving 1989 Cadillac Brougham automobile); *In re Reyes*, 106 B.R. 155 (Bankr. N.D. Ill. 1989)(involving 1988 Chevrolet Blazer); *In re Rogers*, 65 B.R. 1018 (Bankr. E.D. Mich. 1986)(involving red Corvette automobile); *In re Nkanang*, 44 B.R. 955 (Bankr. N.D. Ga. 1984)(involving 1981 Oldsmobile Cutlass Supreme automobile); *In re Davidson*, 10 B.R. 374 (Bankr. W.D. Mich. 1981)(involving 1978 Oldsmobile Cutlass automobile); *In re Granger*, 7 B.R. 15 (Bankr. S.D. Ohio 1980)(involving 1979 Lincoln Town Sedan automobile); *In re Patterson*, 4 B.R. 239 (Bankr. C.D. Cal 1980)(involving 1978 Pontiac Trans Am automobile); *see also In re Cushman*, 217 B.R. 470 (Bankr. E.D. Vir. 1998)(involving a 1995 Ford Contour automobile). Finding that these decisions were correct in their results but disagreeing with their analysis, the *Cordes* court reasoned that the better approach in cases like these is to analyze them under the "good faith" provisions of 11 U.S.C. § 1325(a)(3) instead of § 1325(b)(1)(B). This court agrees.

On appeal GMAC argues that the bankruptcy court denied confirmation of Mundy's plan on the ground that it was not filed in "good faith" under 11 U.S.C. § 1325(a)(3). The court by order, specifically cited 11 U.S.C. § 1325(b) as its basis for denying confirmation of the plan. Nevertheless, in its colloquy with counsel, the court stated that "the plan was filed in **bad**

10

**faith** and confirmation is denied." The bankruptcy court applied both a "disposable income" type of analysis under 11 U.S.C. § 1325(b) and the "good faith" standard. This court finds the analysis of *In re Cordes* persuasive and without further elaboration will analyze the present case under the "good faith" provision of 11 U.S.C. §1325(a)(3). "Whether a Chapter 13 plan has been proposed in good faith is a question of fact subject to the "clearly erroneous" standard of review." *In re Hatem*, 273 B.R. at 904 citing *In re Saylors*, 869 F.2d 1434, 1438 (11th Cir. 1989). The Eleventh Circuit has held that "good faith" requires that a plan have a reasonable likelihood of achieving a result consistent with the objectives and purposes of the Bankruptcy Code. *In re Hatem*, 273 B.R. at 904 citing *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir. 1995). When analyzing whether a debtor has filed his petition in "good faith" the court looks to the "totality of the circumstances." *In re McCormick,* 49 F.3d at 1526. The Eleventh Circuit in *In re Kitchens*, 702 F.2d 885, 888-89 (11th Cir. 1982), enumerated a nonexclusive list of factors that a bankruptcy court should consider when making a determination of "good faith." The *Kitchens* factors are:

    (1) the amount of the debtor's income from all sources;
    (2) the living expenses of the debtor and his dependents;
    (3) the amount of attorney's fees;
    (4) the probable or expected duration of the debtor's Chapter 13 plan;

     (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
     (6) the debtor's degree of effort;
     (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;
     (8) special circumstances such as inordinate medical expenses;
     (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessor;
     (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;
     (11) the burden which the plan's administration would place on the trustee.

    The court finds *Kitchens'* factors one, four, five, six, seven, nine, and ten relevant to the instant case, but relies most on factor five as the ground for its decision. This case is what has been termed euphemistically as a "chapter 20" bankruptcy case, that is a Chapter 13 case brought on the heels of a previously filed Chapter 7 case. While the Supreme Court has made it clear that "chapter 20" cases are not prohibited *per se*, they are still not favored by the courts and will generally be scrutinized more closely. *See Johnson v. Home State Bank*, 111 S. Ct. 2150, 2156 (1991); *In re Cushman*, 217 B.R. at 476.

    Mundy is retired and lives on a fixed income of $3,450.00 dollars per month. By his own testimony he could not afford the Cadillac when he purchased it, but proceeded to foolishly agree to pay $887.73 per month for 72 months. Within two months of purchasing the Cadillac, and less than one month before the first

payment came due, Mundy filed for Chapter 7 protection discharging his unsecured debt. Only eight days after his Chapter 7 discharge, Mundy filed his Chapter 13 proceeding. Mundy's financial circumstances did not changed from the time of his purchase, to the filing of his Chapter 7, to filing of his Chapter 13 case, until today, and they are not likely to change in the near future. While the court recognizes that GMAC was itself culpable by failing to properly assess Mundy's ability to pay, and, would be paying for its mistake if the plan were confirmed, there is at least a fair inference that can be drawn from the evidence that Mundy's "chapter 20" filing was envisioned from the outset as a strategy for purchasing this car, or at the very least for keeping it, even though he could not afford it. The creditor "be damned!" While the line between when a debtor is acting in "good faith" and in "bad faith" may be fuzzy, one thing is for certain, the underlying purpose of the Bankruptcy Code is to provide a debtor with a "fresh start" not to provide him with a way to drive a luxury automobile that he cannot afford and never could.

### Conclusions

Based on the totality of the circumstances, the court finds that Mundy's plan was filed in "bad faith" under 11 U.S.C. §1325(a)(3). Accordingly, the bankruptcy court's denial of confirmation and dismissal of Mundy's petition was not clearly

13

erroneous. The bankruptcy court's judgment is due to be affirmed by separate order.

DONE this ___31st___ day of July, 2003.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE